UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-40062-RGS

IN RE CYPHERMINT, INC.

JOINT STOCK COMPANY, a/k/a
SAINT PETERSBURG INVESTMENTS COMPANY

v.

JOSEPH H. BALDIGA

consolidated with

CIVIL ACTION NO. 11-40063-RGS

TAVRICHESKY COMMERCIAL BANK OF SAINT PETERSBURG

v.

JOSEPH H. BALDIGA

MEMORANDUM AND ORDER
ON APPEAL FROM THE BANKRUPTCY COURT'S DENIAL OF
DEFENDANTS' MOTIONS TO DISMISS

August 10, 2011

STEARNS, D.J.

In this bankruptcy appeal, appellants Joint Stock Company, also known as Saint Petersburg Investments Company (SPIC), and Tavrichesky Commercial Bank of Saint Petersburg (Tavrichesky), seek to reverse the Bankruptcy Court's denial of their motions to dismiss adversary proceedings. The court heard oral argument on August

9, 2011.

## BACKGROUND

SPIC and Tavrichesky are Russian corporations located in St. Petersburg, Russia. Cyphermint is a New York corporation headquartered in Marlborough, Massachusetts. Between 2000 and 2007, SPIC and Tavrichesky made a number of loans to Cyphermint, which were deposited in Cyphermint's United States bank accounts. Between October 27, 2006, and June 8, 2008, Cyphermint made payments by wire transfer to SPIC in the aggregate amount of $1,665,192.31, and to Tavrichesky in the aggregate amount of $5,446,141.24. On June 13, 2008, two UCC Financing Statements in the names of SPIC and Tavrichesky, respectively, were filed with the New York Secretary of State. The Financing Statements claimed as collateral all of Cyphermint's rights in its intellectual property.

On August 21, 2008, three creditors of Cyphermint filed an involuntary petition under Chapter 7 of the United States Bankruptcy Code. On June 29, 2009, Joseph Baldiga, the trustee of Cyphermint, filed adversarial complaints against SPIC and Tavrichesky, alleging that the wire transfer payments and the UCC Financing Statements constituted preferential and/or fraudulent transfers.

On September 26, 2010, both SPIC and Tavrichesky filed motions to dismiss the adversary proceedings on three identical grounds: (1) improper service of process; (2)

lack of personal jurisdiction; and (3) forum non conveniens.  On November 10, 2010, the United States Bankruptcy Court for the District of Massachusetts held concurrent hearings on the motions.  In a Memorandum and Order issued on February 22, 2011, United States Bankruptcy Judge Melvin S. Hoffman denied defendants' motions to dismiss, holding that: (1) service was proper; (2) the exercise of personal jurisdiction was appropriate; and (3) defendants had failed to establish that any adequate alternative forum was available.  On March 24, 2011, both defendants filed motions for leave to appeal, which this court granted.

DISCUSSION

On appeal to the district court, a bankruptcy court's findings of fact are reviewed for clear error, while its rulings of law are reviewed de novo.  *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995); *In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 73 (1st Cir. 1995); *In re Savage Indus.*, 43 F.3d 714, 719 n.8 (1st Cir. 1994).  When hearing a bankruptcy appeal, a district court "is normally limited to the evidentiary record compiled in the bankruptcy court." *In re Colonial Mortg. Bankers Corp.*, 186 F.3d 46, 49 (1st Cir. 1999) (citations omitted).

In their appeal, defendants address only the Bankruptcy Court's holding on the

issue of personal jurisdiction.[1] Defendants argue that the Bankruptcy Court erred in concluding that their contacts with the United States are sufficient to subject them to personal jurisdiction.

Under Rule 7004(f) of the Federal Rules of Bankruptcy Procedure,[2] "a court has personal jurisdiction over a defendant if three requirements are met: (1) service of process has been made in accordance with Bankruptcy Rule 7004 or Civil Rule 4; (2) the court has subject matter jurisdiction under section 1334 of the Code [28 U.S.C. § 1334]; and (3) exercise of jurisdiction is consistent with the Constitution and laws of the United States." 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 7004.07 (15th ed. 2007). On appeal, the parties do not dispute that service was

---

[1] As defendants present no arguments regarding the Bankruptcy Court's holdings with respect to the claims of improper service and forum non conveniens, these issues are deemed waived.

[2] Rule 7004(f) states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F[ed]. R. Civ. P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the [Bankruptcy] Code or a civil proceeding arising under the [Bankruptcy] Code, or arising in or related to a case under the [Bankruptcy] Code.

Fed. R. Bankr. P. 7004(f).

proper, or that the court has subject matter jurisdiction. Defendants argue rather that the third prong of the test has not been met.

To satisfy the third prong, the Bankruptcy Court's assertion of personal jurisdiction must be consistent with the Due Process Clause of the Fifth Amendment. *See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) ("When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment. . . . In such circumstances, the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state (as would be required in a diversity case).").

In cases in which the court has not ordered an evidentiary hearing (such as here), the burden falls to plaintiff to make a prima facie showing of jurisdictional facts sufficient to establish personal jurisdiction. *See U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990) ("When challenged, the plaintiff has the burden of proving the court's jurisdiction over the defendant."); *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) ("Because the district court did not hold an evidentiary hearing but credited the plaintiff's evidentiary submissions, we construe the court's

ruling as employing the prima facie method.").

> Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction. In order to make a prima facie showing of jurisdiction, "the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." The court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing," and "construe them in the light most congenial to the plaintiff's jurisdictional claim."

*Id.* (citations omitted); *see also Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) ("The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.").

Here, the Bankruptcy Court found that the trustee proffered sufficient evidence to establish the existence of "substantial contact between the defendants and the United States." *In re Cyphermint, Inc.*, 445 B.R. 11, 18-19 (Bankr. D. Mass. 2011). The Bankruptcy Court relied primarily on the affidavit of Joseph Barboza, who was President and CEO of Cyphermint from January of 2003 through April of 2008. Specifically, the Bankruptcy Court cited Barboza's testimony that: (1) Cyphermint maintained bank accounts only in the United States; (2) defendants made multiple loans to Cyphermint through various contracts and loan agreements; (3) defendants and their

6

affiliates funded almost all of Cyphermint's start-up and operational costs; and (4) defendants exerted influence and control over the funds that they had loaned to Cyphermint, as well as the business operations of Cyphermint, through Ivan V. Kuznetsov, who substantially controls (or controlled) both defendants.[3]

The Bankruptcy Court further observed that

> both defendants filed financing statements in New York in an effort to perfect their alleged security interests in [Cyphermint's] assets. The defendants purposefully availed themselves of the benefits and protections of conducting business in the United States and thus the exercise of jurisdiction over their persons will not offend traditional notions of fair play and substantial justice embodied in the Fifth Amendment.

*In re Cyphermint*, 445 B.R. at 19, citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). On appeal, the defendants argue (for the first time) that "[t]here is absolutely no evidence in the record

---

[3] The trustee is not arguing that passive investment confers jurisdiction. Rather, he contends that the use of the investment as a lever to exert control constitutes a substantial contact. Barboza testified that Kuznetsov "owns 40% of Tavrichesky and entities controlled by Kuznetsov controlled 47% of [Cyphermint]. Kuznetsov was also [Cyphermint's] Clerk and a Director of [Cyphermint]. Kuznetsov occasionally visited [Cyphermint's] headquarters from the Russian Federation, including one visit on or about April 22 - April 24, 2008. [Barboza] routinely spoke to or corresponded by email with Kuznetsov regarding funding and operations of [Cyphermint]." Barboza Aff. ¶ 8. Barboza further testified that Sergey Bodrunov "also substantially controls or controlled both Defendants. Upon information and belief, he holds or held a majority interest in [SPIC] and owns 40% of Tavrichesky, and entities controlled by Bodrunov controlled 47% of [Cyphermint]. Bodrunov was also an affiliate of [Cyphermint]. Bodrunov visited [Cyphermint] headquarters at least one time, in November 2006." *Id.* at ¶ 9.

7

which suggests that [they] had any involvement with the filing of [the financing statements]," as "[t]he statements bear no signatures or any other indication as to who caused them to be filed." Appellant Br. at 9, 16. Baldiga acknowledges that the financing statements are unsigned, but maintains that the statements "speak for themselves and that the only logical explanation for their filing was that the appellants – whose rights they purport to protect – directed that they be filed." Appellee Br. at 21.

Even if this court were to find (it does not) that there was insufficient evidence to conclude that the appellants/defendants caused the UCC Financing Statements to be filed, the Barboza Affidavit by itself would satisfy a prima facie showing of personal jurisdiction. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-2788 (June 27, 2011) ("Where a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State. In other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'") (citations omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (1985) ("[W]here the defendant 'deliberately' has

engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.") (internal citations omitted); *Int'l Shoe*, 326 U.S. at 317 (stating that the "presence" of a foreign corporation in a state for purpose of maintenance of a suit against it exists "when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given."); *In re Pintlar*, 133 F.3d 1141, 1146-1147 (9th Cir. 1998) (holding that a foreign corporation had sufficient minimum contacts with the United States to permit exercise of jurisdiction over it in a proceeding arising under the Bankruptcy Code, given the foreign corporation's conduct in reaching out to the debtor corporation and forging a continuing relationship with it, and its subsequent looting of the debtor, causing it injury in the United States).

## ORDER

For the foregoing reasons, the Bankruptcy Court's denial of defendants' motions to dismiss is <u>AFFIRMED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE